UNITED STATES, Appellant

v

GARY R. MUSGUIRE, Private First Class, U. S. Army, Appellee

9 USCMA 67, 25 CMR 329

No. 10,101

Decided March 28, 1958

*First Lieutenant Thomas M. Lofton* argued the cause for Appellant, United States. With him on the brief were *Lieutenant Colonel Thomas J. Newton, Major Thomas J. Nichols,* and *First Lieutenant William H. Keniry.*

*Major Frank C. Stetson* argued the cause for Appellee, Accused. With him on the brief were *Colonel J. M. Pitzer* and *First Lieutenant Robert J. Hearon, Jr.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

Among other offenses, the accused was convicted of willful disobedience of the order of a superior officer, in violation of Article 90, Uniform Code of Military Justice, 10 USC § 890. A board of review set aside the findings of guilty on the ground that the order is illegal. Under the provisions of Article 67(b)(2), Uniform Code of Military Justice, 10 USC § 867, the Acting The Judge Advocate General of the Army certified the following question for our consideration:

"Was the order of the accused's superior officer ordering the accused 'To remove his shirt and submit to a blood alcohol test,' a legal order?"

At about 11:00 o'clock on the morning of Sunday, October 21, 1956, the accused started drinking rum. He continued throughout the day. About 9:00 p.m. he accosted Sergeant Wilson in their barracks and addressed him in vile language. Unable to quiet the accused, Sergeant Wilson called Lieutenant Pearson, the Officer of the Day. The Lieutenant ordered the accused to "sit down and be quiet," but the accused refused. He was taken to the dispensary. There, a medical officer ordered him to "remove his shirt and submit to a blood alcohol test." He also refused to obey this order. As a result of his actions, the accused was charged with being drunk and disorderly in quarters, with disrespect to a superior noncommissioned officer, and with willful disobedience of both of the above orders. Except for a finding of guilty of the lesser offense of failing to obey in respect to Lieutenant Pearson's order, he was convicted as charged.

Relying upon the United States Supreme Court's decision in Breithaupt v Abram, 352 US 432, 1 L ed 2d 448, 77 S Ct 408 (1957), the Government contends the board of review erred in holding that the order to submit to a blood test is illegal. As accused's counsel persuasively argue, the *Breithaupt* case is not broad enough to embrace the Government's contention. A majority of the United States Supreme Court expressly held that the rights accorded to an accused in the Federal criminal courts by the Fourth and Fifth Amendments of the United States Constitution are not included in the due process clause of the Fourteenth Amendment, which applies only to prosecutions in the courts of the several states. See also Adamson v California, 332 US 46, 91 L ed 1903, 67 S Ct 1672 (1947). They merely held that taking a sample of blood under the supervision of a skilled technician for use as evidence in a state court did not shock the conscience or offend against a sense of justice, in violation of the due process provision of the Fourteenth Amendment. They did not decide that evidence of a blood test obtained without the accused's consent is admissible in the Federal courts. The question need not be considered here.

The narrow problem before us is whether the order to the accused "to remove his shirt and submit to a blood alcohol test" is a "lawful command" within the framework of the Uniform Code of Military Justice. Article 31 of the *Code* provides that no person subject to the *Code* is required to make a statement regarding an offense of which he is accused or suspected, and cannot be compelled to do so. The word "statement" includes both verbal utterances and actions. United States v Holmes, 6 USCMA 151, 19 CMR 277. Article 31 is wider in scope than the Fifth Amendment. As we pointed out recently in United States v Aronson, 8 USCMA 525, 25 CMR 29, Article 31 is "intended to protect persons accused or suspected of crime who might otherwise be at a disadvantage because of the military rule of obedience to proper authority."

In United States v Jordan, 7 USCMA 452, 22 CMR 242, we considered the connection between Article 90 and Article 31. We concluded that the force

of a military order "is one of the strongest known to military law" and that such an order cannot be employed to "compel a person against his will to produce his urine for the purpose of using it, or an analysis of it, as evidence against him in a court-martial proceeding" without violating Article 31.

The Manual for Courts-Martial, United States, 1951, points out that the "lawful command" contemplated by Article 90 "must relate to military duty." Paragraph 169b. It is evident that it is not the "duty" of a person to assist in the production of evidence which may convict him of a crime.[1] Cf. United States v Aronson, supra.

We answer the certified question in the negative and affirm the decision of the board of review.

Judge FERGUSON concurs.

LATIMER, Judge (dissenting):

I dissent.

The reasons for dissenting from the views expressed by my associates in the instant case may be found in my dissenting opinions in United States v Jordan, 7 USCMA 452, 22 CMR 242, and United States v McCann, 8 USCMA 675, 25 CMR 179.

---

[1] Apart from the question of constitutional admissibility, whether there are other valid means of obtaining a sample of the accused's blood for use as evidence is another matter. See dissenting opinion of Chief Judge Quinn in United States v Barnaby, 5 USCMA 63, 65, 17 CMR 63.