UNITED STATES, Appellee

v

ROBERT F. HARDING, Recruit, U. S. Army, Appellant

11 USCMA 674, 29 CMR 490

*First Lieutenant Robert D. Stiles* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel W. H. Blackmarr*.

*First Lieutenant Richard E. Wiley* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel James G. McConaughy, Major John G. Lovrien*, and *First Lieutenant George J. Miller*.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

While the accused, who weighed 220 pounds, was incarcerated in a post stockade serving a court-martial sentence, he engaged in an altercation with a fellow-prisoner who was some 75 pounds lighter. The blow which did the damage was struck when the victim had turned his head aside to hear the comments of another prisoner, and the force was sufficient to break the victim's jaw and chip several of his teeth. On the next day, accused was placed in disciplinary segregation for an indefinite period not to exceed fourteen days. Later during that period of segregation, he assaulted a superior noncommissioned officer in the execution of his duties and subsequently treated him with contempt and disrespect. Thereafter he was tried on all three offenses with the first mentioned crime alleged as an assault whereby grievous bodily harm was intentionally inflicted, in violation of Article 128, Uniform Code of Military Justice, 10 USC § 928. The other two offenses were laid under Article 91 of the Code, 10 USC § 891, but because the assignment of error does not reach them they are only incidentally involved on this appeal.

At the time of trial, defense counsel sought to bar trial of the last two enumerated offenses on the theory that accused had been punished for those crimes. He relied on United States v Williams, 10 USCMA 615, 28 CMR 181, where we held disciplinary punishment in confinement for minor offenses to be a bar. His hypothesis was that the administrative segregation was administered for those acts charged under Article 91; that assaulting and contemptuously treating a noncommissioned officer in the execution of his duty were minor offenses; and that if the accused was convicted and sentenced for those crimes, he would be subject to double punishment. The evidence showed that disciplinary punishment was imposed for the assault on the inmate, and that rendered the motion inappropriate as to the subsequent offenses. However, no bar to the first assault charge was ever asserted at trial, and this in spite of the fact that the court returned a finding of the lesser included crime of assault and battery. As a consequence of the findings on all three specifications, the accused was sentenced to a dishonorable discharge, total forfeitures, and confinement at hard labor for one year. Intermediate appellate agencies affirmed the findings and sentence, and we granted review to determine whether the punishment for accused's conviction for assault upon the inmate was barred by his prior disciplinary segregation.

The board of review considered the alleged error but concluded the accused could not raise the issue on appeal because it was not asserted at the trial. We do not disagree with the reasoning of the board of review on the question of waiver, but we prefer to reach and decide a more fundamental question and that is, whether an assault consummated by a battery can be a serious offense.

Article 15(e) of the Code, 10 USC § 815, provides:

"The imposition and enforcement of disciplinary punishment under

**675**

this article for any act or omission is not a bar to trial by court-martial for a serious crime or offense growing out of the same act or omission, and not properly punishable under this article; but the fact that a disciplinary punishment has been enforced may be shown by the accused upon trial, and when so shown shall be considered in determining the measure of punishment to be adjudged in the event of a finding of guilty."

In defining and illustrating a minor offense, paragraph 128b of the Manual for Courts-Martial, United States, 1951, states:

"Minor offenses.—Whether an offense may be considered 'minor' depends upon its nature, the time and place of its commission, and the person committing it. Generally speaking the term includes misconduct not involving moral turpitude or any greater degree of criminality than is involved in the average offense tried by summary court-martial. An offense for which the punitive article authorizes the death penalty or for which confinement for one year or more is authorized is not a minor offense. Offenses such as larceny, forgery, maiming, and the like involve moral turpitude and are not to be treated as minor. Escape from confinement, willful disobedience of a noncommissioned officer or petty officer, and protracted absence without leave are offenses which are more serious than the average offense tried by summary courts-martial and should not ordinarily be treated as minor."

In United States v Williams, supra, Judge Ferguson, speaking for the Court, restated the principle in this language:

"The argument that the accused's offense was not minor need not long detain us. The Table of Maximum Punishments, Manual, supra, paragraph 127c, authorizes the imposition for this misconduct of a penalty not to exceed confinement at hard labor for three months and forfeiture of two-thirds pay for a like period. In discussing the same concept with relation to the exercise of nonjudicial powers under Article 15, Code, supra, 10 USC § 815, the Manual, supra, in paragraph 128b, points out that the term generally includes misconduct not involving moral turpitude or any greater degree of criminality than is involved in the average offense tried by summary court-martial. These considerations, as well as the attendant circumstances, persuade us that the accused's delict was not so serious as the Government contends and, thus, was properly punishable by disciplinary action under Article 13, Code, supra."

See also United States v Vaughan, 3 USCMA 121, 11 CMR 121, and United States v Fretwell, 11 USCMA 377, 29 CMR 193.

From all of the foregoing, it is made clear there are numerous factors which may be used to determine whether an offense is minor. Using some of the measuring rods, such as severity of maximum sentence imposable, would lead to the conclusion that an assault and battery might be in that class. Using other of the mentioned yardsticks, including the offenses ordinarily tried by summary courts-martial, inevitably leads to a finding that it is serious. The net of all the factors and the statements in the foregoing authorities brings into focus the salutary rule that all the attending facts and circumstances of the crime must be considered in making an appropriate determination of whether it is inferior in importance in the military criminal field. When the nature, time and place of commission of this offense are considered together with the injuries inflicted and the potential for harm to the maintenance of good order and discipline in the service, it is readily apparent that it was not minor in nature. It was alleged as an aggravated assault and the facts justified that charge. The place of the assault, the relative size of the accused and the victim, and the physical damages inflicted on the latter point to an aggravated crime with a direct and marked impact on military discipline. It hardly seems consonant with logic and reason to hold that when

an accused brutally assaults another inmate, breaks his jaw and splinters his teeth with a result that the bones must be wired in place, that a petty crime only is involved. On the contrary, we believe a beating such as the one reflected by this record presents a serious offense and one which should carry a substantial sentence within the Table of Maximum Punishments. It is to be remembered that the seriousness of crimes is usually measured by the facts and circumstances and not simply by arbitrary limits of maximum punishment. A precise dividing line drawn by civilian misdemeanors and felonies is impractical and inexpedient in the military for there are other influences and penalties which must be taken into consideration. By way of illustration, a battery may consist of a mere touching, or it may be bottomed upon a severe beating. The former is of a minor nature but not so with the latter although the maximum punishment imposable is the same. Accordingly, to say that all batteries are minor merely because of the punishment ceiling is to disregard the obvious and pay too much attention to only one of a number of factors.

It is contended that because the court-martial found the accused guilty of a lesser offense than the one alleged, we cannot go behind that finding. We believe that assertion is inapposite because we are not detracting one iota from the full faith and credit of the finding. A close analysis of our position will make it apparent we are not seeking to establish that the accused committed an offense greater than assault and battery. All we are saying is that the gamut of that crime is from petty and trifling injuries inflicted by force to those of serious consequences, and that the facts of this case place it on the upper rung of the ladder. In that connection, it is to be noted there is no dispute concerning the nature, type, or gravity of the injuries inflicted on the victim and the finding of the court-martial in no way negates their seriousness. Accordingly, we are at liberty to assess them as they are established by the evidence.

For the foregoing reasons, we find the findings and sentence correct in law and the decision of the board of review is, therefore, affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (dissenting):

I dissent.

The principal opinion finds that the accused was correctly convicted of assault and battery for two reasons. The major premise upon which reliance is placed is the belief that, under the circumstances, accused was found guilty of a major offense. The contrary conclusion of the board of review that the crime was a minor offense is completely ignored. Reference is also made to the doctrine of waiver inasmuch as accused's counsel did not, at the trial level, interpose the objection of former punishment concerning this offense. I fully disagree with the majority's conclusion that assault and battery is a major offense and I do not believe that waiver may properly be invoked here.

In United States v Williams, 10 US CMA 615, 28 CMR 181, we held that disciplinary punishment imposed upon a prisoner under Uniform Code of Military Justice, Article 13, 10 USC § 813, for commission of a minor offense, barred his later trial by court-martial. In that case, we dealt with the crime of disrespect toward a noncommissioned officer, in violation of Code, supra, Article 91, 10 USC § 891. In like manner, in United States v Vaughan, 3 USCMA 121, 11 CMR 121, we pointed out that:

". . . The line separating those offenses which 'merit' court-martial action, in addition to disciplinary punishment, from those which do not, should not be vague or meandering— for the problem, in so far as possible, demands clear demarcation as a predicate to uniform administration."

Finally, in United States v Fretwell, 11 USCMA 377, 29 CMR 193, we upheld findings of guilty of drunkenness on duty in the case of an officer who had previously received nonjudicial punishment for the same offense. While I dissented in that case, I note with interest the emphasis there placed by the majority upon the fact that the

officer's misconduct was punishable by a punitive discharge.

Bearing the foregoing considerations in mind and turning to the facts of the instant case, we find that the accused, originally charged with assault whereby grievous bodily harm was intentionally inflicted, in violation of Code, supra, Article 128, 10 USC § 928, was found guilty only of assault consummated by a battery, in violation of the same Article. Study of the record makes clear the reason for the acquittal of the greater offense, for it appears undisputed that accused's victim, a fellow-prisoner, was unintentionally injured to the extent alleged and that only fisticuffs were involved. Indeed, there is evidence from which the court could have inferred that the victim was more than a willing participant in the fight and, having armed himself with a belt, precipitated the conflict.

The maximum sentence imposable for the offense of which accused was found guilty is confinement at hard labor for six months and forfeiture of pay for a like period. I deem the findings of the court-martial and the maximum imposable sentence dispositive of the question whether accused's offense was major or minor. At the outset, I note that no state in the Union treats simple assault as anything more than a misdemeanor. Indeed, the maximum sentence prescribed therefor by the President in paragraph 127c of the Manual for Courts-Martial, United States, 1951, is well within the jurisdictional limitations of our service "police court" —the special court-martial. Moreover, military courts have heretofore considered assault consummated by a battery as a "minor offense" properly punishable in a nonjudicial proceeding. United States v Wells, 33 BR 91; United States v Harding, CM 403134, December 31, 1959.

My brothers have nevertheless concluded that assault and battery, under the circumstances here depicted, is a serious crime. Initially, it is argued that this offense is not of the type ordinarily tried by summary court-martial. Manual, supra, paragraph 128b. While we have no information relating to the disposition of charges before that petty tribunal, I suspect this is the very type of offense which might be so tried. The Manual provision to which we all refer states that the term "minor offense" includes all misconduct *"not involving moral turpitude or any greater degree of criminality than is involved in the average offense tried by summary court-martial."* (Emphasis supplied.) This measuring rod obviously means that the nature of the offense, rather than the surrounding circumstances, must be such that no commander would ordinarily try it before a summary court. It can hardly be doubted that many commanders might justifiably so dispose of charges of assault and battery, for, as noted above, it is universally regarded as no more than a misdemeanor involving no moral stigma.

Secondly, my brothers look behind the verdict of the court-martial in order to point up the seriousness of accused's offense. Thus, they say this is no ordinary assault, for the victim's jaw was broken. While I have already adverted to the circumstances under which this unfortunate result occurred, I also desire to call attention to the fact that the members of the court were made fully aware of all the facts surrounding the charge of aggravated assault. Nevertheless, they saw fit to reduce the degree of accused's culpability to that found. No matter how we might differ with that verdict, I believe it improper to ignore its rejection of the allegation of intentional infliction of grievous bodily harm and act as if findings of guilty of the major crime had been returned. Looking thusly to evidence deemed untrustworthy by the fact finders not only removes the conclusiveness legally due their verdict but also institutes a "vague and meandering" line which cannot offer the slightest degree of guidance to commanders and military prison authorities. United States v Vaughan, supra. Indeed, the so-called standard applied in the principal opinion means no more than that the question whether an offense is major or minor depends upon our subjective reaction when the case finally reaches us. Thus, if this accused's victim had

admitted using a weapon, or if the weight of the two parties to the fight had been more nearly equal, or perhaps if wires had not been medically applied to the victim's jaw, we might have reached a different result. To me, the statement of this proposition demonstrates its absurdity and the necessity that we not go behind the jury's verdict. One can always find in these records of trial an evidentiary basis upon which the Government properly acted in referring serious charges for a hearing but which was specifically rejected by more than one-third of the court members. Accordingly, it is always possible to reach a desired result. Thus, rather than establishing a rule upon which action can be taken with some certainty, we do little more than announce that the doctrine of former punishment is a guessing game in which we have the last word.

If we are not to look to the evidence and divide assaults into degrees according to the injuries inflicted, a matter which I parenthetically note that neither Congress nor the President has done, what measure should be laid down? I suggest to my brothers that the rule should be that which was implicitly announced in United States v Fretwell, supra. There, the majority relied heavily upon the fact that the accused's crime was punishable by dismissal. The Manual refers to the same doctrine. Manual, supra, paragraph 128*b*. Briefly then, I would hold that offenses permitting a sentence to dishonorable separation from the service and those which may be properly characterized as felonies are major offenses, nonjudicial punishment for which is no bar to a subsequent trial. Where, however, as here, accused's offense is recognized by all jurisdictions as no more than a misdemeanor and the punishment involved includes no punitive separation from the service, I would conclude that its trial is barred. To hold otherwise simply means that we can make any violation of the Code, however ridiculous, a major crime. I believe such a position wholly untenable.

The principal opinion also refers with approval to the board of review's holding that accused waived the doctrine of former punishment by failing to raise it when the court-martial returned its findings of guilty of the lesser included offense of assault and battery. I would not invoke waiver here, for the doctrine is clearly not applicable. In United States v Brown, 10 USCMA 482, 28 CMR 48, we pointed out that the function of objections was to signify the existence of an issue of law and to give notice of its terms. Thereafter, the Government may be able at the trial level to show the existence of facts which make the objection untenable, as, for example, demonstrating that an apparently illegal search was in fact authorized. Here, however, the issue is purely one of law, and nothing could have been added by the Government nor the accused which would have aided us or the board of review one whit in resolving the question before us. Hence, I hardly believe it proper to refuse to accord the accused relief simply because counsel was inactive after the verdict and could not have raised the matter before as the accused was then charged with a serious crime. Moreover, I call attention to the analogous situation of the applicability of the Statute of Limitations to findings of guilty of absence without leave when the accused was originally charged with desertion. We have there placed a duty upon the law officer to bring that defense to the attention of an apparently uninformed accused. United States v Rodgers, 8 USCMA 226, 24 CMR 36; United States v French, 9 USCMA 57, 25 CMR 319. I see little reason not to apply the doctrine of those cases to the situation before us and to refuse application of a waiver. In short, the record before us is complete, and the absence of objection denies us no information. Thus, it is unconscionable to close our eyes to the existence of accused's receipt of two punishments for the same offense. Indeed, if Judge Latimer's suggestion that we must look to the potential of harm to military order and discipline is correct, I can think of few occurrences more damaging to the morale of our armed forces than learning that a member may be twice chastised for a fist fight.

**679**

I would reverse the decision of the board of review concerning the findings of guilty of assault and battery and return the record of trial for reassessment of sentence on the other offenses of which accused stands convicted.