BARR, Judge:
Appellant was tried and convicted, pursuant to pleas of guilty, by military judge, sitting as a special court-martial, of the following periods of unauthorized absence, in violation of Article 86, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 886: the specification under the Charge alleged an absence from 22 August through 21 December 1981; the specification under the Additional Charge alleged an absence extending from 21 December 1981 to 20 December 1983.[1] The sworn Charge was received by the officer exercising summary court-martial jurisdiction on 17 March 1982. The Additional Charge, though properly sworn to, was not received by an official similarly empowered until 8 March 1984— approximately 2 years, 2V2 months after the completion of the charged offense. The charge sheet, therefore, on its face, clearly revealed that the statute of limitations had not been properly and timely tolled as to the Additional Charge. Article 43(c), UCMJ, 10 U.S.C. § 843(c).
After arraignment and the tendering of pleas of guilty to all charges, and prefatory to the commencement of the providence inquiry, the following colloquy took place:
MJ: Before we proceed, I want to point out that you have a right to raise the statute of limitations regarding the additional charge. Inasmuch as the statute had run before it was referred and sent to this court for trial. Have you discussed this with your counsel?
ACC: Yes, sir.
MJ: Before I can accept your plea, you must waive or give up your right to raise the statute of limitations. Do you wish to do so?
ACC: Yes, sir.
MJ: Lieutenant Dinkelacker, are you convinced that it is in your counsel’s interest to do — in your client’s interest to do so?
DC: Yes, sir.
MJ: Very well, the statute of limitations is waived.
This issue was again discussed during the inquiry into the pretrial agreement, when the following exchange ensued:
MJ: Did you enter into this agreement of your own free will?
ACC: Yes, sir.
*390 MJ: Did the idea originate with you and Lieutenant Dinkelacker?
AC: Yes, sir.
MJ: Did you agree to plead guilty as you have here today in exchange for a promise from the convening authority that he would not approve a sentence greater than the one specified in the agreement?
ACC: Yes, sir.
MJ: Did you further agree to waive the statute of limitations with regard to the additional charge in return for the aforementioned promise?
ACC: Yes, sir.
MJ: Do you understand that you have a right to change your mind at this point and enter pleas of not guilty, or to raise the statute?
ACC: Yes, sir.
MJ: Do you desire to do that?
ACC: No, sir.
The pretrial agreement, Appellate Exhibit I, includes this sentence: “The accused agrees to waive the Statute of Limitations with regard to the Additional Charge.” The agreement also contains the standard provision indicating that appellant and his counsel were the originators of the agreement and its contents.
The root cause for this concern about the effect of the statute of limitations, and which generated the above quoted dialogues, is evident from a review of the two charge sheets contained within the record of trial. The initial charge sheet, as to which charges were receipted for on 17 March 1982, contained two charges: (1) the Article 86, UCMJ, violation covering the period 22 August to 21 December 1981 and originally denominated as Charge II; and (2) an Article 85, UCMJ, 10 U.S.C. § 885, allegation as the original Charge I which alleged appellant’s absence in desertion from his unit, “to wit: Naval Station, Norfolk, Virginia,” on 21 December 1981, with a termination date of 20 December 1983. An interim modification to this charge sheet deleted the “desertion” language from the specification of what was then styled Charge I, redesignated Charge I as a violation of Article 86, UCMJ, vice Article 85, and renumbered its specification to now become Specification 1, deleted the reference to Charge II, and made its specification the second specification under the newly designated, and sole, Charge under Article 86. The ultimate, and later, modification — withdrawal of the 21 December 1981 to 20 December 1983 absence (Specification 1) and its referral as the Additional Charge, now alleging the unit of appellant as USS BRISCOE — resulted in the newly referred offense becoming subject to the statute of limitations defense in bar of trial.
Though not essential to the disposition of this case, one further observation may be made concerning the dates on which the events transpired. The original charges of desertion (as Charge I) and unauthorized absence (as Charge II) were referred to a special court-martial on 7 February 1984. By a pretrial agreement, signed on 8 March 1984, appellant offered to plead guilty to an additional charge which would incorporate the period of absence originally referred as a desertion, and to waive the statute of limitations as to that charge if the specification alleging that absence — as to which the statute of limitations had been properly tolled — was withdrawn. The Additional Charge was preferred, receipted for, and referred on 8 March. On these facts, we could surmise that appellant and his counsel, uncertain whether the designation of appellant’s unit as Naval Station, Norfolk, Virginia, constituted a material and fatal variance in light of the evidentiary proof available for trial, but desirous of obtaining what we can almost take judicial notice of as constituting the “standard” pretrial agreement granted by Naval Station, Norfolk, for absence offenses — accepted without regard to the duration of absence or the past conduct of an accused — opted for the route of certitude and offered to waive the statute of limitations issue which would necessarily arise if, and when, the 21 December 1981 absence were withdrawn and referred as an additional charge. The convening authority, perhaps also laboring under a similar concern on *391 the issue of variance, readily agreed to the offer.
With this background recited, we now turn to the specified issue to be resolved:
WHETHER THE INQUIRY OF THE MILITARY JUDGE INTO APPELLANT’S WAIVER OF THE STATUTE OF LIMITATIONS WAS SUFFICIENT WITHIN THE CONTEXT OF PARAGRAPH 68 c, MANUAL FOR COURTS-MARTIAL, 1969 (REV.).
At the outset, we note that Article 43, UCMJ, the sole codal provision relating to the statute of limitations, establishes no procedure to effectuate the substantive law set forth therein. This is quite proper, in that, by Article 36, UCMJ, 10 U.S.C. § 836, Congress delegated the sole power and authority to establish procedures governing trials by court-martial to the President. This power has been exercised by promulgation of the Manual for Courts-Martial, 1969 (Rev.) (MCM, 1969) and its predecessor, the Manual for Courts-Martial, United States, 1951 (MCM, 1951). The drafters of the 1951 Manual did not write on an entirely clean slate. What we shall denominate as the advisory procedure incident to the application of Article 43(c), UCMJ, to a particular case and its accused has its origins in Paragraphs 49 g, 67, and 78 a, Manual for Courts-Martial, U.S. Army (1949) (MCM, U.S. Army, 1949). This latter Manual was also promulgated by the President pursuant to a Congressional delegation set forth in Article of War 38.[2]
Paragraph 49 g: Explanation of rights to accused. — Whenever deemed necessary the court will cause to be explained to the accused any right which he appears not fully to understand. The right of the accused with respect to Art. 39 (Statute of Limitations), the meaning and effect of a plea of guilty (71), the right to remain silent or to testify (134d; 135b; A.W. 24) or to make an unsworn statement (76) will be explained in open court when applicable unless it otherwise affirmatively appears that the accused is aware of his rights in the premises____ Paragraph 67: If it appears from the charges that the statute has run against an offense or (in the case of a continuing offense) a part of the offense charged, the court will bring the matter to the attention of the accused and advise him of his right to assert the statute. This action should, as a rule, be taken at the time of the arraignment. If the accused pleads guilty to a lesser included offense against which the statute of limitations has apparently run, the court will advise the accused of his right to interpose the statute in bar of trial and punishment as to that offense.
Paragraph 78 a: If by exceptions and substitutions an accused is found guilty of a lesser included offense against which it appears that the statute of limitations (A.W. 39) has run, the court will advise him in open court of his right to avail himself of the statute in bar of punishment if he so desires. However, if an accused pleads guilty upon arraignment to such lesser included offense and persists in his plea after the meaning and effect thereof have been explained to him, including his right to interpose the statute of limitations in bar of punishment if he is found guilty of the lesser included offense, he is deemed to have waived the statute of limitations unless he expressly asserts it in bar of punishment.
Though minor alterations were made to these advisory procedures when the 1951 Manual (MCM, 1951) was promulgated, the parallels are clear. Paragraphs 68 c and 74 h, MCM, 1951, are substantially the same as their progenitors — Paragraphs 67 and 78 a, MCM, U.S. Army, 1949, respectively. The new Paragraph 68 c, MCM, 1951, did, however, add, as an exception to the duty of the court to advise an accused of his right to assert the statute of limitations, the clause “unless it otherwise affirmative *392 ly appears that the accused is aware of his rights in the premises.”[3]
The most dramatic change occasioned by the adoption of the 1951 Manual is found in the procedural successor to Paragraph 49 g, MCM, U.S. Army, 1949 — Paragraph 53 h, MCM, 1951:
Explanation of rights of accused. Ordinarily, the court need not volunteer advice to the accused during the course of the trial as it may be assumed that his counsel has performed his duties properly, has advised the accused of his rights and the law affecting the case, and that, for reasons best known to them, they desire to pursue a certain course. When deemed necessary, the court will cause to be explained to the accused any right which he appears not to understand. The right of the accused with respect to Article 43 (Statute of limitations (68c)), the meaning and effect of a plea of guilty (70), the right to remain silent or to testify as a witness (148e, 149b; Art. 31), and, after any finding of guilty is announced, to make a statement (75c) will, when applicable, be explained in open court unless it otherwise affirmatively appears of record that the accused is aware of his rights in the premises.
Herein was recognized the legitimate presumption that counsel representing an accused at a court-martial has performed all duties incident to such service and the fact that certain tactical decisions of that counsel are better left unexplored by the court. This presumption did more than just relieve the court of certain obligatory duties regarding explanation of rights to an accused. By virtue of its embodiment as a statutory presumption, with its emphasis upon the scope of counsel duties to which it would be applied, it established the concept that the counsel who represents an accused — not the court — shoulders the primary responsibility for ensuring that an accused is aware of his rights at trial.
A comparison of Paragraph 49 g, MCM, U.S. Army, 1949, with Paragraph 53 h, MCM, 1951, further reveals, with unmistakable clarity, the continued and preferred status then accorded four fundamental rights of an accused under military law: (1) the right to raise the statute of limitations as a bar to trial; (2) the right to remain silent or testify as a witness; (3) the right to understand the meaning and effect of a guilty plea; and, (4) the rights as a witness during the sentencing phase of trial. Exempted from the statutory presumption, these four rights were required to be the subject of independent advice by the court (or law officer, as appropriate) to the accused, UNLESS the record affirmatively established that the accused was aware of them. The traditional and “hold-over” method, from the Army practice, of having the record affirmatively evidence an accused’s right to testify, or not, as a witness was for his counsel to state to the court, “The rights of the accused as a witness have been explained to him and he (elects to remain silent) (wishes to take the stand as a witness).” See, Appendix 8a, MCM, 1951, at 516. Though not so expressly indicated in that Appendix (Guide-Trial Procedure), we may assume that similar statements of counsel on the record would have sufficed to affirmatively evidence an accused’s awareness of the other rights granted preferred status in Paragraph 53 h. See e.g., Paragraph 70 b (2), 68 c, Appendix 8a, at 513 (accused's right to limit testimony) and 520 (accused’s allocution rights), MCM, 1951. See also, United States v. Endsley, 10 U.S.C.M.A. 255, 27 C.M.R. 329 (1959).
The promulgation of the 1969 Manual (MCM, 1969 (Rev.)), resulted in more than cosmetic changes to the aforementioned procedures. The provision in Paragraph 68 c, MCM, 1951 — also contained in Paragraph 67, MCM, U.S. Army, 1949 — that the advisory procedure be conducted at the time of arraignment was deleted in Paragraph 68 c, MCM, 1969 (Rev.), as being unduly restrictive. See, Analysis of Contents, Manual for Courts-Martial, United States, 1969 *393 (Rev.), at 12-3. Thus, as it became permissible for the advisory procedure to be conducted at any stage of the proceedings, we, as a court of review, may survey the entire record to see if that procedure was followed, or the foundation for applying its limitation was manifest.
In addition, the role of legally qualified counsel in trials by court-martial expanded to a level not theretofore witnessed in military jurisprudence. Compare Paragraph 6 c, MCM, 1951, with that paragraph in MCM, 1969 (Rev.). Paragraph 53 h, MCM, 1969 (Rev.), in particular, evidences the increased confidence expressed by the President that a military accused will be fairly and competently tried when represented by such military counsel by extending the presumption to encompass matters of advisory procedure previously lodged with the court as a responsibility.
Properly identifying, applying, and being guided by the aforementioned presumption that a military counsel has properly advised his accused of his trial rights, together with its implicit recognition that the counsel bears the primary responsibility in this regard, is, we believe, critical to defining what now exists as the statutorily erected sua sponte responsibilities of a military judge under Paragraph 53 h, MCM, 1969 (Rev.), and, hence, to the resolution of the issue at bar.
We interpret Paragraph 53 h as establishing an advisory, procedure which can be stated as a general rule, subject to one mandatory and three limited exceptions:
General Rule: There exists a presumption under the law that legally qualified military counsel representing an accused at a court-martial has correctly advised that accused of his rights at trial and of the law affecting the case. The military judge, therefore, must assume no independent responsibility or duty to volunteer advice to the accused regarding these matters.
Mandatory Exception: It is mandatory that the military judge advise an accused of his rights to counsel (Paragraph 61 /(2)), of the meaning and effect of a guilty plea (Paragraph 70 b), and of his allocution rights in sentencing (Paragraph 72 c (2)). The presumption established by Paragraph 53 h does not apply. Furthermore, the military judge is not relieved of this duty to advise even in the face of unequivocal and affirmative evidence that the accused is aware and fully knowledgeable of these three rights.[4]
Limited Exception 1: Notwithstanding the presumption, and certainly not at variance with it, if the military judge believes, based on events which transpire at trial or on the responses given by an accused to the court’s inquiries, that the accused does not comprehend, or is unaware of, a particular right, the judge has the discretion— that is, “when deemed necessary” — to either inquire of counsel or offer explanation to the accused concerning the right in question.
Limited Exception 2: In light of its continued preferred status, the military judge has a duty to advise an accused of his right to assert the statute of limitations as a bar to trial. The presumption stated in the general rule does not apply. However, if there exists affirmative evidence that the accused is aware of his rights under the statute of limitations, the military judge need not even explore the issue.
Limited Exception 3: If an accused is not represented by legally qualified counsel, the military judge should explain to him “his rights to remain silent, testify as a witness, or make an unsworn statement as appropriate at the proper stages of a trial.” (Emphasis added). However, if represented by counsel, it is only where these three rights arise during the sentencing phase that the military judge must volunteer advice as to their exercise to an ac *394 cused. In all other situations, the presumption stated in the general rule applies and, as a consequence, no advice need be tendered by the military judge to the accused.
Working from this interpretation of Paragraph 53 h, we must now determine what evidence meets the statutory standard as constituting affirmative evidence that an accused understands his rights under Article 43(c), UCMJ. When considered in light of the aforementioned traditional and “hold-over” method of establishing affirmative evidence of awareness of rights on the record, we conclude that, at a minimum, the statutory standard is met when legally qualified counsel asserts at trial that he has advised the accused of the rights under Article 43(c), UCMJ, and enters, on behalf of the accused, a plea of guilty to the offense subject to the defense stated within that Article. It becomes obvious, therefore, that if, in addition to, or in lieu of, the above, the accused acknowledges to the military judge that he understands the right as explained by his counsel and persists in waiving it, the statutory standard is fulfilled. Further, where, as in this case, a pretrial agreement, originating with an accused himself, contains as one of its terms an offer to waive the statute of limitations in return for sentence relief, the evidence of awareness of the right bargained to be waived is all the more affirmatively established. We find substantial support for this conclusion in United States v. Troxell, 12 U.S.C.M.A. 6, 30 C.M.R. 6 (1960). Under the statutory standard set forth in Paragraph 53 h, we find a knowing waiver by appellant of his right to assert the statute of limitations in bar of trial on the Additional Charge.
Appellant, attempting to erect a parallel, suggests that the extensive advisory procedures mandated by United States v. Care, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969) (providence inquiries into guilty pleas) and United States v. Hoaglin, 10 M.J. 769 (NCMR 1981) (inquiry into pretrial agreements) should, with equal logic, be applied to, and necessitate to that degree, an inquiry conducted to determine whether an accused has “consciously and knowingly” waived his right to assert the statute of limitations in bar of trial. First, our reading of the cases cited by appellant in support of this proposition[5] does not convince us that the Court of Military Appeals intended, by its varying use of the terms “knowingly,” “consciously” or “consciously and knowingly,” to depart from the statutory standard embraced within Paragraph 53 h, that affirmative evidence of knowledge of the right renders specific advice by the military judge regarding that right unnecessary. Second, we note that the procedures enunciated in Care are now embodied in Paragraph 70 b, MCM, 1969 (Rev.), as a specific statutory advisory procedure. Failure to follow the judicially created procedures set forth in Hoaglin, which, in my opinion, serve no greater purpose than to exemplify our love of the litany, has been uniformly — and correctly — determined by this Court to be error lacking in prejudice. Third, Congress, acting through the President, has already articulated a standard which delineates both the substance and the scope of the inquiry to be conducted in order to find both knowledge and waiver of the right safeguarded by Article 43(c), UCMJ. There remain no interstices to be filled by a court.
Finally, we refuse to engraft upon the present statutory standard a judicially created procedure of litany which would, in its effect, result in an ultra vires rewrite of Paragraph 53 h, demean the professional and ethical function of military defense counsel, and advance not one iota the purpose to be served by Article 43(c). Military courts, both trial and appellate, are the creations of statute. They have no common law powers; they possess no inherent power. They may exercise only those powers vested in them by express statute — the UCMJ and MCM. With the exception of the powers granted by Articles 66(f) and *395 67(a)(1), UCMJ, 10 U.S.C. § 866(f) and § 867(a)(1), and Section 0152, Manual of the Judge Advocate General, to establish its own rules of procedure, no military court has the power or authority to prescribe or create, even in the guise of legislative interpretation, “pretrial, trial, and post-trial procedures, including modes of proof, for cases arising under” the UCMJ. This is a purely legislative function, delegated solely to the President by Congress in Article 36, UCMJ. We, like all military courts established by, or provided for, under the UCMJ, are constituted by — not as — the legislative branch of Government under the Constitution. We are, and should be, unwilling to trespass beyond our statutory power and assume the legislative prerogative, granted to the President, to prescribe rules for trial procedure. We are, and should be, unwilling to presume a competence to so act. To, by judicial fiat, promulge as a requisite trial procedure the form of inquiry suggested by appellant would make us creators of the law — an office for which no military court was established. For a court of limited jurisdiction, as established under the powers granted by Article I of the Constitution, to so legislate is an act of judicial arrogance and amounts to judicial tyranny over the system it was established to protect. We decline the invitation to seize and exercise a power which neither we nor any military court legally possesses — the power to prescribe pretrial, trial, and post-trial rules of procedure governing trials by court-martial.
We find no merit to the matters raised by trial defense counsel in his response to the review of the staff judge advocate. We also find that the failure of the military judge to religiously comply with the procedure set forth in United States v. Hoaglin, supra, has resulted in no prejudice to appellant.
Accordingly, the findings and sentence as approved on review below are affirmed.
Judge MITCHELL concurs.
GREGORY, Senior Judge
(concurring):
Although I join in the basic rationale of Judge Barr’s majority opinion, I would not want military judges to harbor the impression that all vitality and utility has gone out of United States v. Hoaglin, 10 M.J. 769 (N.C.M.R.1981). Deficiencies in inquiries by military judges concerning pretrial agreements still exist, and these deficiencies are examined for possible prejudice. The reasons that led to this 1981 en banc decision are still valid. Military judges are well-advised to follow the guidelines laid down in Hoaglin to ensure that the rights of all parties are safeguarded.

. Appellant pled to a termination date of 6 December 1983 and findings were entered in consonance with the plea.

. As this Court stated in United States v. Centeno, 17 M.J. 642 (N.M.C.M.R.1983), Congress, in adopting Article 43, UCMJ, placed its imprimatur upon the advisory procedure then prevalent under the MCM, U.S. Army, 1949.

. This language of limitation was obviously included to conform with the identical clause in Paragraph 49 g, MCM, U.S. Army, 1949, as adopted in Paragraph 53 h, MCM, 1951.

. See United States v. Donohew, 18 U.S.C.M.A. 149, 39 C.M.R. 149 (1969). Abo compare, Paragraph 70 b, MCM, 1951, with Paragraph 70 b, MCM, 1969 (Rev.), wherein the language "unless it affirmatively appears that the accused understands the meaning and effect thereof’ has been deleted from the latter provision.

. United States v. Rodgers, 8 U.S.C.M.A. 226, 29 C.M.R. 36 (1957); United States v. Troxell, supra; United States v. Wiedeman, 16 U.S.C.M.A. 365, 36 C.M.R. 521 (1966).